**Lois MAGRAY, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 93–C–257.**

United States District Court, E.D. Wisconsin.

March 30, 1995.

Craig J. Hanson, Legal Services of Northeastern Wisconsin, Inc., Sheboygan, WI, for plaintiff.

Charles Guadagnino, Asst. U.S. Atty., Milwaukee, WI, for defendant.

## ORDER

TERENCE T. EVANS, Chief Judge.

Magistrate Judge Patricia Gorence has issued a decision recommending that I deny the Secretary of Health and Human Services' motion for summary judgment, grant Ms. Magray's motion for summary judgment, and reverse and remand this matter to the Secretary for further proceedings. The Secretary has filed an objection to Judge Gorence's recommendation. Reviewing the recommendation *in toto* and reviewing *de novo* those portions to which the Secretary objected as required under 28 U.S.C. § 636(b)–(1), I find that the magistrate judge's decision is correct as a matter of law and I adopt her recommendation.

The facts and procedural history of this case have been discussed in detail on a number of occasions. I shall not belabor them further here.

The crux of the magistrate judge's recommendation, and the portion with which the Secretary takes issue, is her installation of a legal standard which an administrative law judge must apply when evaluating whether a particular claimant should be declared disabled under section 12.05(C) of the listing of impairments. Section 12.05(C) states that a claimant is disabled when he or she has:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, § 12.05(C). In her recommendation, Judge Gorence states that an ALJ is not free to apply whatever standard he chooses, or to operate without a standard when he determines whether a claimant has a physical or other mental impairment that limits her functioning. Judge Gorence states that the ALJ must determine if the claimant's impairment "had more than a slight or minimal

effect" on her ability to perform work-related functions before he may make such a determination.

Judge Gorence notes that there are no opinions from the court of appeals for this circuit which have addressed the meaning of the second prong of the 12.05(C) standard. However, the magistrate judge also notes that the courts of appeals for a number of other circuits have addressed this meaning. These courts have held that an "impairment" imposes a "significant work-related limitation" on a claimant when its effect on the claimant's performance of work-related functions is "more than slight or minimal." The magistrate judge believes these holdings were appropriate and that such a standard should be used in this circuit.

If this standard applied to Ms. Magray's case an ALJ would need to determine whether her personality disorder had more than a slight or minimal effect on her ability to perform before he could decide whether she was disabled. As Judge Gorence notes, the ALJ made no such determination. In fact, the ALJ made no reference at all to any legal standard. Accordingly, the magistrate judge found that it was impossible to tell whether the ALJ had committed an error of law. Therefore the magistrate judge recommended that the case be remanded to assure that the ALJ applied the proper legal standard. *See Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir.1989).

In her objections to Judge Gorence's recommendation the Secretary argues that the magistrate judge may not require the ALJ to apply a particular legal standard during his 12.05(C) determination of disability. According to the Secretary, such a requirement contradicts acquiescence ruling 93–1(4) (Apr. 29, 1993) (AR 93–1(4)).

Moreover, the Secretary notes that the magistrate judge did not cite AR 93–1(4) in her recommendation. Thus, according to the Secretary, by failing to acknowledge a "relevant ruling," Judge Gorence's recommendation stands in opposition to *Allen v. Sullivan,* 977 F.2d 385 (7th Cir.1992). Therefore, the Secretary says, the recommendation should be ignored. In support of her argument the Secretary focuses on language in the *Allen*

decision which states that courts should not rely on a Seventh Circuit opinion when that opinion contradicts a social security ruling of which the court was apparently unaware. (*Allen,* at 390). The Secretary then extrapolates from this language to the conclusion that I cannot rely on Judge Gorence's recommendation because it contradicts an acquiescence ruling which Judge Gorence does not cite.

 Such an extrapolation is unwarranted for a number of reasons. First, as Ms. Magray notes in her summary judgment reply brief, acquiescence rulings and social security rulings are entirely different animals. Holdings that apply to social security rulings generally do not apply to acquiescence rulings. Second, both the Secretary and Ms. Magray fully addressed AR 93–1(4) in their briefs. Thus, I can safely assume that Magistrate Gorence was aware of AR 93–1(4).

 Third, the magistrate judge's recommendation does not contradict AR 93–1(4). AR 93–1(4) states: "Agency policy is that the adjudicator in each case decides whether an impairment constitutes a significant work-related limitation of function...." AR 93–1(4) at 3. Judge Gorence's recommendation does not prevent the adjudicator from deciding on a case-by-case basis whether an impairment constitutes a significant work-related limitation. Judge Gorence's recommendation simply requires the ALJ to apply an articulated legal standard when making his case-by-case determination.

According to AR 93–1(4), such a requirement is not inappropriate. AR 93–1(4) states that "In the Fourth Circuit, the rule has evolved that an inability to do one's past relevant work due to the additional impairment meets the 'additional and significant work-related limitation of function' requirement of section 12.05(C) of the regulations." *Id.* Judge Gorence's recommended requirement is a similar evolution of 12.05(C).

 Finally, the *Allen* court did not hold, as the Secretary seems to suggest, that a social security ruling can overrule a decision of the court of appeals. In *Allen* the court of appeals refused to follow *Nelson v. Secretary*

*of Health & Human Services,* 770 F.2d 682 (7th Cir.1985) (*per curiam* ), because the relevant portion of the decision had already been overturned in *DeFrancesco v. Bowen,* 867 F.2d 1040 (7th Cir.1989), and because the *Nelson* court was unaware of the social security ruling.

Accordingly, I find that Judge Gorence's decision is correct as a matter of law. I adopt her recommendations. Because I believe that Judge Gorence has skillfully set forth the reasons for her recommendations, I incorporate her opinion as an attachment to this order and submit both for publication.

As a mandate, IT IS ORDERED that Ms. Magray's motion for summary judgment is GRANTED. The previous determination of the Secretary is reversed and the case is remanded to the Secretary for further proceedings consistent with this opinion and the magistrate judge's recommendation.

IT IS FURTHER ORDERED that the Secretary's motion for summary judgment is DENIED.

## MAGISTRATE JUDGE'S RECOMMENDATION TO CHIEF UNITED STATES DISTRICT JUDGE TERENCE T. EVANS

GORENCE, United States Magistrate Judge.

### NATURE OF CASE

This case, which has been referred to this court for recommendation by Chief United States District Judge Terence T. Evans pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 13.03(a) (E.D.Wis.), is before the court following supplemental proceedings before the Secretary of Health and Human Services (hereinafter referred to as Secretary). It was remanded pursuant to the January 23, 1992, order of Judge Evans adopting the November 22, 1991, recommended decision of United States Magistrate Judge Aaron E. Goodstein.

In that recommendation, Magistrate Judge Goodstein concluded that the case should be remanded for further proceedings because the Administrative Law Judge (hereinafter referred to as ALJ) did not adequately develop the record regarding the plaintiff's capaci-

ty to meet the basic mental demands of competitive remunerative unskilled work. Specifically, he found that the record did not adequately address the plaintiff's ability to function under the demands of the workplace, rather than under the demands of a household setting. Magistrate Judge Goodstein further noted that it might be necessary to seek clarification from Peter J. Kores, Ed.D., or additional evaluation by a mental health expert. The court also noted that the opinion of a vocational expert would prove useful. Furthermore, if it appeared that the plaintiff's mental capacity significantly diminished her available employment opportunities at the unskilled level, it would be improper to rely upon the medical-vocational guidelines and the testimony of a vocational expert would be necessary. (Tr. 45).

The plaintiff, Lois Magray, now seeks judicial review of the Secretary's final decision denying her May 10, 1988, application for Supplemental Security Income benefits under the Social Security Act, 42 U.S.C. § 405(g). The Secretary filed a transcript of the supplemental proceedings, and the parties have filed cross motions for summary judgment which are ready for resolution and will be addressed herein.

### PROCEDURAL HISTORY

The procedural history of this case is set forth in Magistrate Judge Goodstein's November 22, 1991, recommendation to Judge Evans. Upon remand, the ALJ obtained an additional mental consultative examination and conducted a supplemental hearing on April 10, 1992.

The plaintiff appeared, represented by a paralegal, and testified. An attorney who was employed at the same legal services office as the paralegal also observed the hearing. Vocational expert A. Andrew McDonald, Sr., Ph.D., appeared and testified at the request of the ALJ.

Thereafter, on August 18, 1992, the ALJ issued a decision finding that the plaintiff was not disabled. Based on the vocational evidence and Section 2.04 of Appendix 2, Subpart P, Regulations No. 4, which was used as a framework for decision making, he

found that there existed a significant number of sedentary to light unskilled jobs within the regional and national economy that were available to the plaintiff. The ALJ's decision became the final decision of the Secretary on January 11, 1993, when the Appeals Council declined to assume jurisdiction of the plaintiff's case.

In reaching this decision, the Appeals Council noted that a November 1992, vocational evaluation report, submitted by the plaintiff subsequent to the ALJ's decision, did not provide a basis for assuming jurisdiction. It found that additional tests documented in that report were not relevant in the determination of whether the plaintiff would be incapable of routine, simple, unskilled work as a packager, sorter, and janitor's helper as identified by the vocational expert. It further noted that those tests suggested potential areas for employment including cleaning, housekeeping, food service-related work, as well as packaging and assembly jobs in manufacturing.

The Appeals Council also rejected the plaintiff's contention that the ALJ should have found her to be disabled based upon the vocational expert's response to a hypothetical question positing severe, frequent pain, noting that such pain was not documented by the record. Finally, notwithstanding the plaintiff's contention to the contrary, the Appeals Council found that the vocational expert's conclusion regarding jobs available to the plaintiff was valid and was based on consideration of the relevant evidence.

### SECRETARY'S FINAL DECISION

In his August 18, 1992, decision, the ALJ found that the medical evidence establishes that the plaintiff has a combination of mental impairments that is severe, consisting of mild mental retardation and a personality disorder with significant dependent features, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. The ALJ specifically found that the clinical evidence failed to support the plaintiff's testimony concerning pain in various parts of her body. A psychologist indicated that it is possible that many of the plaintiff's physical complaints were stress related. The ALJ further found that the plaintiff's mental functional limitations did not support her testimony that she cannot function in routine, competitive, simple, unskilled, verbal type work activity.

The ALJ went on to find that the plaintiff has no exertional limitations and has the residual functional capacity to perform the non-exertional requirements of simple, unskilled, routine, repetitive jobs which do not require literacy or mathematical computation. The ALJ further found that, considering the types of work which the plaintiff is still functionally capable of performing in combination with her age, illiteracy, and lack of work experience, and relying upon the vocational evidence, there are a significant number of jobs available to the plaintiff in both the regional and national economy. Examples of such routine, repetitive, simple, unskilled, verbal type jobs are sorting, packing, and janitor's helper jobs. Consequently, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of his decision.

The extensive case history is well documented in Magistrate Judge Goodstein's November 22, 1991, recommendation, the ALJ's August 18, 1992, decision, and the parties' briefs and will not be reiterated. Only facts which are particularly relevant to this court's decision will be discussed herein.

### APPLICABLE LAW

The procedure for determination of whether a claimant is disabled consists of a five step test, which has been described as follows:

The Secretary must determine in sequence: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Garfield v. Schweiker,* 732 F.2d 605, 607 n. 2 (7th Cir.1984). Once the claimant has satisfied steps one and two, he will automatically be

found disabled if he suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform his past work, the burden shifts to the Secretary to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir.1984).

*Allen v. Sullivan*, 977 F.2d 385, 387 (7th Cir.1992). The burden is on the plaintiff to come forward with medical and other evidence the Secretary may require in making the disability determination. 42 U.S.C. § 423(d)(5); *Rhoderick*, 737 F.2d at 715. The Secretary must evaluate and resolve conflicts in the evidence, determine credibility, and decide the case accordingly. *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).

■ "The Social Security Act specifically provides that 'the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir.1989) (citing 42 U.S.C. § 405(g); *see also, Arbogast v. Bowen*, 860 F.2d 1400, 1403 [7th Cir.1988]; *Ray v. Bowen*, 843 F.2d 998, 1001 [7th Cir. 1988]; *Walker v. Bowen*, 834 F.2d 635, 639 [7th Cir.1987]; *Burnett v. Bowen*, 830 F.2d 731, 734 [7th Cir.1987]).

■ In reviewing the decision of the Secretary, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir.1986). The findings of the Secretary must be accepted if they are supported by substantial evidence; this court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Secretary. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Stuckey v. Sullivan*, 881 F.2d 506, 508 (7th Cir.1989); *Walker*, 834 F.2d at 640; *Delgado*, 782 F.2d at 82. However, even if substantial evidence supports the Secretary's findings, this court may reverse if the ALJ committed an error of law. *Pugh*, 870 F.2d at 1274.

■ Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401, 91 S.Ct. at 1427; *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir.1980). Both the evidence favoring the claimant, as well as the evidence favoring the claim's rejection, must be examined since review of the substantiality of the evidence takes into account whatever in the record fairly detracts from its weight. *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir.1986). Substantial evidence may be something less than the greater weight or preponderance of the evidence. *Young v. Secretary of Health and Human Services*, 957 F.2d 386, 389 (7th Cir.1992).

■ The claimant has the burden of proving the existence of a disability. However, once the claimant has demonstrated an impairment of sufficient severity to preclude the kind of work in which he was previously engaged, the burden shifts to the Secretary to prove that some other kind of "substantial gainful employment" exists which the claimant is able to perform. *Tom v. Heckler*, 779 F.2d 1250, 1252–53 (7th Cir.1985).

To expedite the carrying of this burden, the Secretary has promulgated 20 C.F.R. Part 404, Subpart P, App. 2, the "Medical–Vocational Guidelines", commonly referred to as the "grid." The rules of the "grid" reflect the analysis of the various vocational factors (that is age, education, and work experience) in combination with the individual's residual functional capacity (his or her maximum sustained work capability for sedentary, light, medium, heavy, or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his or her vocationally relevant past work.

■ Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is disabled. *See Cummins v. Schweiker*, 670 F.2d 81, 82 (7th Cir.1982). However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute said findings. Where any of the findings of fact do not coincide exactly with the corresponding

**1286**

criteria of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. *Heckler v. Campbell,* 461 U.S. 458, 462 n. 5, 103 S.Ct. 1952, 1955 n. 5, 76 L.Ed.2d 66 (1983); *Smith v. Schweiker,* 735 F.2d 267, 271 (7th Cir.1984).

Nonetheless, the Secretary is permitted to conclude that a nonexertional limitation, while present, has no significant impact on a claimant's capacity to perform the range of work he is otherwise exertionally capable of performing, making proper application of the grid. *Caldarulo v. Bowen,* 857 F.2d 410, 413 (7th Cir.1988) (citing *Smith v. Schweiker,* 735 F.2d 267, 272 n. 3 [7th Cir.1984] ). In any event, there must be reliable evidence of some kind which would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. *Ehrhart v. Secretary of Health and Human Services,* 969 F.2d 534, 535 (7th Cir.1992) (citing *Warmoth v. Bowen,* 798 F.2d 1109, 1112 [7th Cir.1986] ).

## ANALYSIS

The plaintiff argues that the Secretary's final decision denying her application for benefits is incorrect as a matter of law. She contends that the ALJ incorrectly applied Section 12.05(C) of the Listing of Impairments (hereinafter referred to as Listing), concerning evaluation of mental retardation at step three of the sequential evaluation process. Alternatively, the plaintiff argues that there is not substantial evidence to support the ALJ's finding that there are a significant number of jobs in the national economy which she can perform. In so contending, the plaintiff asserts that the ALJ used incomplete hypothetical questions in examining the vocational expert and that the Secretary improperly disregarded evidence pertaining to her ability to engage in work-related activities.

In her defense of the ALJ's final decision, the Secretary asserts that the plaintiff's mental impairments were properly analyzed by the ALJ under Listing § 12.05(C). The Secretary also argues that the testimony of the vocational expert provides substantial evidence in support of the ALJ's conclusion that there are significant number of jobs in the national economy which the plaintiff can perform. With regard to the final issue raised by the plaintiff, the Secretary asserts that the Appeals Council properly declined to consider additional evidence the plaintiff submitted to it, and that this court may not consider such evidence in deciding whether there is substantial evidence to support the ALJ's final decision of not disabled.

### Evaluation Under Listing of Impairments

Section 12.05(C) of the Listing provides that a claimant is disabled when he or she has:

1) A valid verbal, performance, or full scale IQ of 60 through 70 and,

2) A physical or other mental impairment imposing additional and significant work-related limitation of function.

Such listing must be read in conjunction with 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(D) which states that IQ's of 70 and below are characteristic of approximately the lowest 2 percent of the general population. Section 12.00(D) further provides that where verbal, performance, and full scale IQ's are provided, the lowest of these is to be used in conjunction with Listing 12.05.

In this case, the ALJ implicitly found that the plaintiff's full scale IQ score of 60, her lowest IQ score, met the first prong of Listing 12.05(C) but that her personality impairment did not impose an "additional and significant work-related limitation of function" as required by the second prong of the Listing.

The Court of Appeals for the Seventh Circuit has not expressly addressed the meaning of the second prong of Listing 12.05(C). However, the courts of appeals of other circuits have concluded that an impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal. *See Fanning v. Bowen,* 827 F.2d 631, 632–33 (9th Cir. 1987). (citing *Pullen v. Bowen,* 820 F.2d 105, 109 [4th Cir.1987]; *Cook v. Bowen,* 797 F.2d 687, 690 [8th Cir.1986]; *Nieves v. Secretary*

*of Health & Human Services,* 775 F.2d 12, 14 [1st Cir.1985]; *Edwards by Edwards v. Heckler,* 755 F.2d 1513, 1515 [11th Cir.1985].)

In *Nieves,* 775 F.2d at 14, the court held that, when an additional impairment is found to be "severe", it necessarily satisfies the second prong of Listing 12.05(C) of an "impairment imposing additional and significant work-related limitation of function." However, in *Fanning,* 827 F.2d at 633, the court emphasized that a finding of severity is *not* required to satisfy the more than slight or minimal effect standard. *See also, Edwards by Edwards,* 755 F.2d 1513, 1515 (11th Cir. 1985) ("significant" work-related limitation of function involves something more than "minimal" but less than "severe").

This standard is consistent with the manner in which the court of appeals for this circuit analyzed the existence of an additional significant limitation of function on the plaintiff's ability to work in *Fisher v. Bowen,* 869 F.2d 1055 (7th Cir.1989). In *Fisher,* neither the plaintiff's alcoholism nor report of hallucinations were found to satisfy the second prong of Listing 12.05(C). Notably, in *Fisher,* the ALJ found that the plaintiff only had "slight limitations in terms of daily living and social functioning, less than frequent deficiencies of concentration, and only occasional episodes of deterioration or decompensation which would not preclude the claimant from performing simple, repetitive work activity." *Fisher,* 869 F.2d at 1057.

■ In this case, this court is unable to determine whether the ALJ erred as a matter of law in his application of Listing 12.05(C). The ALJ did not render any express findings as to whether the plaintiff's personality disorder, with significant dependent features, had more than a slight or minimal effect upon the plaintiff's ability to perform basic work activities. The ALJ found that the plaintiff has a "combination of mental impairments, that is severe, consisting of mild mental retardation and a personality disorder with significant dependent features" but did not make any specific finding as to the severity of her personality disorder in and of itself.

■ This problem is further compounded in his discussion of the second prong of 12.05(C) because the ALJ does not clearly address the impact of the plaintiff's personality disorder on the plaintiff's ability to function. While this court is cognizant of the difficulty which a fact-finder may encounter in distinguishing between functional limitations where a claimant suffers from two mental impairments, it is necessary that there be at least some greater attempt to articulate the limitation of function due to the additional mental impairment, which, in this instance is a personality disorder.

From this court's review of the evidence relating to the plaintiff's mental impairment, particularly the March 14, 1992, Medical Assessment of Ability to Perform Work–Related Activities (Mental) completed by Evelyn A. Rosen, Ph.D., it is conceivable that the ALJ could find that the plaintiff's personality disorder did not have any more than a slight or minimal effect upon the plaintiff's ability to make occupational, performance and personal-social adjustments, as well as to perform other work-related activities, Dr. Rosen consistently reported that the plaintiff's primary limitations were cognitive.

However, this court's role is not to act as a trier of fact. Rather, it is to review the Secretary's final decision. Based on the decision rendered in this case by the ALJ, this court cannot determine whether the ALJ applied the proper legal standard in evaluating whether the plaintiff's mental impairments met Listing 12.05(C). Consequently, this matter should be remanded to the Secretary for further proceedings.

Notwithstanding the court's recommendation, it will address the other issues raised by the plaintiff since it may provide useful guidance.

### Adequacy of Vocational Hypothetical

■ The plaintiff argues that the hypothetical question which the ALJ posed to the vocational expert did not include any reference to the plaintiff's IQ score or to her personality disorder. Therefore, she asserts that the vocational expert's response to that question does not constitute substantial evidence to support the Secretary's finding that

the plaintiff is capable of engaging in substantial gainful employment.

This argument is lacking in merit. The plaintiff is correct that the ALJ's hypothetical question did not include any explicit reference to the plaintiff's mild mental retardation or to her personality disorder. However, the functional impact of those impairments was reflected in the last two pages of Exhibit 27 (Tr. 260–61) which the ALJ asked the vocational expert to read and consider in responding to the hypothetical question.

Furthermore, the plaintiff's paralegal representative expanded the hypothetical question by adding the final paragraph of Dr. Rosen's narrative report which stated that the plaintiff is capable of functioning in a work setting commensurate with her abilities, if she were carefully trained and could work with a supportive and helpful supervisor. (Tr. 89–90). The vocational expert indicated that the terms of the expanded hypothetical question would not alter his response as to the availability of jobs to the plaintiff. Both the hypothetical posed by the ALJ, as well as that subsequently modified by the plaintiff's representative, adequately reflect the limitations on the plaintiff's ability to perform substantial gainful activity as a result of her mental impairments.

 Finally, this court notes that the vocational expert was present during the entire administrative hearing and testified that he had reviewed the plaintiff's entire file. To the extent any omission from the hypothetical question could be somehow gleaned, the record supports the conclusion the expert would have considered any such factors in his response even if they were not expressly included in the hypothetical question. *See Waite v. Bowen,* 819 F.2d 1356, 1361 (7th Cir.1987) (finding that, even if the hypothetical question did not expressly indicate pain, the vocational expert was aware of such complaints since he stated he had been provided with copies of all medical reports, had read and understood them, had reviewed and was familiar with the exhibits in the case, and there was nothing to indicate the expert did not consider all of the information to him); *see also, Ehrhart v. Secretary of Health and Human Services,* 969 F.2d 534, 540 (7th Cir.

1992) (when the record supports a conclusion that the vocational expert considered the medical reports and documents, his responses are probative of both residual functional capacity and jobs which a claimant can reasonably perform, even if a hypothetical question itself does not take into account every aspect of the claimant's impairments).

 In sum, the vocational expert's testimony as to the availability of jobs, given the plaintiff's vocational factors and Dr. Rosen's assessment, constitutes substantial evidence that the plaintiff is not disabled, because there are available to her a significant number of jobs within the national economy. *See Lee v. Sullivan,* 988 F.2d 789, 794 (7th Cir. 1993) (upholding finding of not disabled based upon testimony of vocational expert identifying 1,400 job positions which the plaintiff, having a limited residual functional capacity to perform sedentary and light work, could do within the greater Milwaukee metropolitan area).

### *Consideration of Additional Evidence*

 The final issue raised by the plaintiff is that the Appeals Council erred as a matter of law when it declined to assume jurisdiction of her case to consider the November 16, 1992, vocational evaluation report prepared by Michael Schulte of Lakeshore Technical College. The plaintiff argues that consideration of the Schulte report was required under the terms of the remand order and, alternatively, that the Appeals Council was required to consider the report as new and material evidence pursuant to 20 C.F.R. § 404.970.

Neither of the plaintiff's contentions in this regard is persuasive. First, the ALJ complied with the magistrate judge's remand recommendation that he seek specific expert opinions on the question of the plaintiff's capacity to meet the basic mental demands of competitive, remunerative, unskilled work, when he obtained the opinions of psychologist Evelyn A. Rosen and vocational expert A. Andrew McDonald, Sr., Ph.D. Second, the ALJ initially allowed the plaintiff 30 days from the April 10, 1992, hearing to submit additional evidence. The plaintiff subse-

quently received three extensions of time resulting in an August 1, 1992, deadline for the submission of additional evidence. It was only on December 17, 1992, that the plaintiff submitted the Schulte evaluation, almost four months *after* the ALJ had issued his August 18, 1992, decision finding that the plaintiff was not disabled. The record clearly demonstrates that the plaintiff was given more than sufficient time to supplement the record in any manner she thought appropriate.

Furthermore, when the Appeals Council has refused to review a social security case, the decision for review in this court is that of the ALJ. The correctness of that decision depends on evidence which was before the ALJ and not new evidence submitted by the plaintiff to the Appeals Council in support of her application for review. *See Eads v. Secretary of DHHS*, 983 F.2d 815, 817 (7th Cir.1993); *See also Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir.1994).

Although the Schulte report is "technically part of the administrative record," the additional evidence submitted to the Appeals Council cannot be used as a basis for a finding of reversible error. *See Wolfe v. Shalala*, 997 F.2d 321, 322 n. 3 (7th Cir.1993); *see also Luna*, 22 F.3d at 689. Thus, review before this court is essentially limited to the ALJ's decision, except when the Appeals Council makes a mistake of law, such as erroneously finding that evidence submitted to it was not material to the disability determination. *See Eads*, 983 F.2d at 817 (citing *Nelson v. Bowen*, 855 F.2d 503, 506–08 [7th Cir.1988]).

The plaintiff's submissions can be construed as arguing that the Appeals Council made a mistake of law in concluding that the Schulte evaluation was not new and material evidence. The regulation applicable to the Appeals Council review of an ALJ's decision states that, "the Appeals Council will review a case [i]f new and material evidence is submitted ..." 20 C.F.R. § 404.970(b). New evidence is material if there is a "reasonable possibility" it would change the outcome. *Nelson v. Bowen*, 855 F.2d 503, 506 (7th Cir.1988). In order to be material, evidence must also be relevant to the time the plaintiff's applications for benefits were under consideration by the Secretary. *See Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1989).

This court has considered the contents of the Schulte report in which the evaluator opined that the plaintiff would be "unemployable in the competitive labor market." (Tr. 12). However, that same report indicates that the plaintiff would benefit from "supported employment with the agency" suggesting areas to consider for employment, including cleaning, housekeeping, and food service related work, as well as packaging and assembly jobs in manufacturing.

This finding is not inconsistent with the ALJ's conclusion that the plaintiff could engage in a significant number of sedentary to light jobs such as sorting and/or packaging jobs in manufacturing and janitor's helper jobs. As a result, this court concludes that it cannot be said that the Appeals Council erred as a matter of law in finding that the evidence newly submitted to it was not material to the disability determination.

### Summary

To recapitulate, this court is unable to conclude from the record that the ALJ correctly analyzed the plaintiff's mild mental retardation and personality disorder under Listing 12.05(C) for mental retardation. Specifically, it cannot ascertain whether the ALJ applied the appropriate standard for evaluating the plaintiff's personality disorder as an additional and significant impairment under the second prong of that Listing. Consequently, a remand of this matter for further proceedings is necessary.

However, this court further concludes that, notwithstanding the plaintiff's contentions to the contrary, the hypothetical questions presented to the vocational expert were adequate and the responses to those questions constitute substantial evidence that the plaintiff can engage in substantial gainful employment within the national economy provided, of course, that she does not meet the Listing. The court further concludes that the Appeals Council did not err as a matter of law in

refusing to consider the Schulte evaluation as new and material evidence.

### CONCLUSION

**NOW THEREFORE, IT IS HEREBY RECOMMENDED** that the United States District Judge enter an order GRANTING the plaintiff's motion for summary judgment of reversal and remanding this matter for further proceedings not in consistent with this recommendation;

**IT IS FURTHER RECOMMENDED** that the United States District Judge enter an order **DENYING** the defendant's motion for summary judgment of affirmance.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Local Rule 13.03 (E.D.Wis.), whereby written objections to the foregoing recommendation may be filed in duplicate with the Clerk of Court within ten days from the date hereof. Failure to file a timely objection shall result in a waiver to your right to appeal.

Dated at Milwaukee, Wisconsin this 29th day of September, 1994.